UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jason L., | Case No. 23-CV-0184 (JWB/JFD) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Martin J. O'Malley, Commissioner of the Social Security Administration, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jason L. seeks judicial review of a final decision by the Defendant Commissioner of Social Security, who denied the Plaintiff's application for supplemental security income ("SSI"). The matter is now before the Court on Plaintiff's Brief (Dkt. No. 11), Defendant's Memorandum (Dkt. No. 16), and Plaintiff's Reply Brief (Dkt. No. 18.) Plaintiff argues that the Administrative Law Judge ("ALJ") who authored the final decision erred by not adequately accounting for Plaintiff's social limitations in the residual functional capacity ("RFC")[1] assessment. Defendant opposes Plaintiff's position and asks the Court to affirm the final decision. As set forth below, the Court concludes that the ALJ did not err and therefore recommends that the final decision be affirmed.

---

[1] RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

I.   Background

   A.   Relevant Medical Evidence

Plaintiff's physical and mental impairments are chronic heart failure, status post-aortic aneurysm and ICD placement; hypertension; diabetes mellitus; obesity; bipolar disorder with depression and anxiety; obsessive compulsive disorder; and alcohol and cannabis dependence. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 30; Pl.'s Br. 3.)[2] The single issue presented for judicial review is whether the ALJ erred by not including in Plaintiff's RFC assessment a limitation to superficial contact with the public, coworkers, and supervisors. (*See* Pl.'s Br. 6, 10–12.) The Court's consideration of medical and other evidence is limited to this issue.

In October 2020, Dr. Alford Karayusuf, M.D., conducted a psychological consultative evaluation of Plaintiff. (R. 1213–15.) Plaintiff told Dr. Karayusuf that he lived with his girlfriend half the time and his mother the other half of the time and that he got along with both of them. (R. 1214.) He also saw his parents once a week and got along with them, but he had no contact with his eight children. (R. 1214.) Plaintiff reported that he was very mistrustful of people and believed they made fun of him. (R. 1214.) Dr. Karayusuf described Plaintiff as mildly anxious, slightly subdued, polite, friendly, cooperative, and pleasant. (R. 1214.) The doctor opined that Plaintiff would be restricted to superficial interactions with coworkers, supervisors, and the public. (R. 1215.)

---

[2] The administrative record is filed at Dkt. No. 10. The record is consecutively paginated, and the Court cites to that pagination rather than ECF number and page. The Court also cites to the original pagination on Plaintiff's brief, which differs from the ECF pagination.

On November 17, 2020, state agency psychological consultant Kiela Bolden, Psy.D., assessed Plaintiff's medically determinable impairments as part of the initial disability determination. (R. 92–94.) Dr. Bolden assessed Plaintiff's ability to interact with others as moderately limited, and she agreed with Dr. Karayusuf's opinion that Plaintiff would be limited to superficial interactions with coworkers, supervisors, and the public. (R. 93, 99–100.) At the reconsideration level of review, state agency psychological consultant Marci Mylan, Ph.D., L.P., agreed with Dr. Bolden's findings. (R. 113, 124, 126.)

B.     **Procedural History**

Plaintiff applied for SSI benefits on July 28, 2020, claiming to have been disabled since April 15, 2019. (R. 28.) Plaintiff's application was denied at both the initial review and reconsideration stages. Plaintiff then sought review by an ALJ, and a hearing was held before an ALJ on October 5, 2021. (R. 49.) Plaintiff and vocational expert Mitchell Norman testified. (R. 50.) After hearing testimony from Plaintiff, the ALJ posed the following hypothetical question to Mr. Norman:

> [P]lease assume a hypothetical individual of the same age, education, and work experience as the claimant, who could perform light work as defined in the regulations. He should not climb ladders, ropes, and scaffolds. He could occasionally climb ramps and stair[s]. He could frequently kneel and crawl. He should not work at unprotected heights or have the operational control of moving dangerous machinery. He could have occasional interaction with supervisors, coworkers, and the public. He could have occasional changes in the work setting, and he should not work at a production rate pace, such as on a moving assembly line, or work involving hourly quotas.

(R. 77.) The ALJ's second hypothetical question added that the individual could understand, remember, and carry out simple, routine instructions and tasks. (R. 77.) The ALJ's third hypothetical question changed the type of work from light work to sedentary

3

work. (R. 78.) In response to the third hypothetical question, Mr. Norman testified that the individual could work as a dowel inspector, lens inserter, or bonding machine operator. (R. 78.)

The ALJ issued a written decision on December 16, 2021, concluding that Plaintiff was not disabled (R. 25–44). In arriving at that conclusion, the ALJ followed the familiar five-step sequential analysis outlined in 20 C.F.R. § 416.920. At each step, the ALJ considered whether Plaintiff was disabled based on the criteria of that step. If he was not, the ALJ proceeded to the next step. *See* 20 C.F.R. § 416.920(a)(4). At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 28, 2020. (R. 30.) At the second step, the ALJ found that Plaintiff had the severe impairments of "chronic heart failure status post aortic aneurysm and ICD placement, hypertension, diabetes mellitus, obesity, bipolar disorder with depression and anxiety, obsessive compulsive disorder, and alcohol and cannabis dependence." (R. 30.)

At step three, the ALJ concluded that Plaintiff's impairments did not meet the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I, nor did his impairments medically equal the severity of any listed impairment. (R. 31.) The ALJ specifically considered Listing 12.04 (depressive, bipolar, and related disorders) and Listing 12.06 (anxiety and obsessive-compulsive disorders). (R. 33.) One of the ways in which a claimant can meet a listed impairment is to satisfy certain criteria, commonly referred to as the paragraph A, B, and C criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. Relevant here, one of the paragraph B criteria is the claimant's ability to interact with others, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04.B.2, 12.06.B.2, and

4

the ALJ found Plaintiff moderately limited in this area of functioning. (R. 33.) The ALJ based this finding on the following evidence: Plaintiff's self-reported ability to get along with authority figures as "50/50"; Plaintiff's statement that he had never been fired because of problems getting along with others; Plaintiff's report that he had no difficulty getting along with others; Plaintiff's report that he spent time and communicated with others on a daily basis; Plaintiff's statement that he got along with his girlfriend and parents; Dr. Karayusuf's findings that Plaintiff was cooperative, friendly, and polite; and mental status examinations that described Plaintiff as cooperative, friendly, and able to interact with others. (R. 33–34; *see* R. 246–47.)

Before proceeding to step four, the ALJ assessed Plaintiff's RFC, which is a measure of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). With respect to Plaintiff's mental health conditions, the ALJ focused on Plaintiff's diagnoses of bipolar disorder with depression and anxiety, and obsessive-compulsive disorder. (R. 39.) The ALJ specifically considered Dr. Karayusuf's medical opinion. (R. 39.) In relevant part, the ALJ noted that Plaintiff had told Dr. Karayusuf that he was very mistrustful of people, and that Dr. Karayusuf described Plaintiff as slightly anxious, slightly subdued, polite, friendly, spontaneous, and cooperative. (R. 39.) The ALJ included in the written decision Dr. Karayusuf's finding that Plaintiff would be restricted to superficial interactions with coworkers, supervisors, and the public. (R. 40.) Overall, the ALJ found Dr. Karayusuf's opinion "persuasive," *see* 20 C.F.R. § 416.920c(c), giving the following explanation:

> The undersigned also considered the opinion of Alford Karayusuf, MD, from the October 2020 psychological consultative evaluation (Ex. 4F). As discussed above, Dr. Karayusuf opined the claimant is able to understand, retain and follow simple instructions; *is restricted to superficial interactions with fellow workers, supervisors and the public*; and within these parameters, is able to maintain pace and persistence in the performance of repetitive tasks (Ex. 4F/3). Dr. Karayusuf's opinion related to "repetitive" tasks is not persuasive, as it is not consistent with the lack of symptoms reports and other mental status exam findings, including cognitive findings, even with substance use. Otherwise, Dr. Karayusuf's opinion is well supported and consistent with the record as a whole and is persuasive.

(R. 41) (emphasis added).

As part of the RFC assessment, the ALJ also considered the prior administrative medical findings of state agency psychological consultants Dr. Bolden and Dr. Mylan. (R. 41.) The ALJ noted that the consultants had found, in relevant part, that Plaintiff had moderate limitations in interacting with others and would be limited to brief and superficial contact with the public, coworkers, and supervisors. (R. 41.) The ALJ considered these prior administrative medical findings to be "persuasive," explaining:

> The undersigned also considered the opinions of the state agency psychological consultants (Exs. 1A, 4A). The state agency psychological consultants opined the claimant has mild limitations in understanding, remembering, and applying information and in concentrating, persisting, or maintaining pace, and moderate limitations in interacting with others and in adapting or managing oneself. The psychological consultants further opined the claimant is able to understand, remember or apply detailed instructions with sustained concentration; *is limited to brief and superficial contact with the public, coworkers and supervisors*; and is able to appropriately respond to simple routine changes in a work setting. The state agency psychological consultants' opinion related to detailed instructions is not consistent with the psychological consultative evaluation findings and continued drug addiction and alcoholism. It is not persuasive. Otherwise, their opinion is well supported and consistent with the same evidence and is persuasive. However, given the psychological consultative evaluation findings and substance use, the undersigned does adjust the "paragraph B" criteria to comport with the

6

limitations and further limits the claimant to low stress work as defined above.

(R. 41) (emphasis added).

After considering the opinion evidence and all other relevant evidence in the record, the ALJ articulated Plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except with the following limitations: He should not climb ladders, ropes, and scaffolds. He could occasionally climb ramps and stairs. He could frequently kneel and crawl. He should not work at unprotected heights or have the operational control of moving, dangerous machinery. He could have occasional interactions with supervisors, coworkers, and the public. He could have occasional changes in the work setting. He should not work at a production rate pace, such as on a moving, assembly line or work involving hourly quotas. He could understand, remember, and carry out simple, routine instructions and tasks.

(R. 36.) With this RFC, the ALJ concluded, Plaintiff could not perform his past relevant work as a fast-food worker or day laborer. (R. 42.) Plaintiff could, however, work as a lens inserter, dowel inspector, or bonding machine operator. (R. 43.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 16.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

**II.     Legal Standards**

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ committed an error of law, *Nash v. Commissioner, Social Security Administration*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to

support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

The claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for SSI, the claimant must establish that "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

Title 20 C.F.R. § 416.920c sets forth the standards under which an ALJ reviews medical opinion evidence, such as Dr. Karayusuf's opinion, and prior administrative medical findings, such as Dr. Bolden's and Dr. Mylan's mental RFC assessments. An ALJ must consider how "persuasive" the opinion or findings are according to five factors:

supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 416.920c(c).

### III. Discussion

Plaintiff argues that the ALJ should have specifically included in the RFC assessment Dr. Karayusuf's opinion and the state agency consultants' findings that Plaintiff was limited to superficial contact with the public, coworkers, and supervisors. (Pl.'s Br. 8.) Plaintiff argues that the ALJ's limitation to "occasional" contact with supervisors and coworkers pertains to the quantity of interactions, but the medical sources' limitation to "superficial" contact pertains to the quality of interactions. (Pl's Br. 8, 10.) Because the ALJ found the opinion and findings "persuasive," Plaintiff argues, the ALJ erred by not including the superficial-contact limitation in the RFC. The Commissioner responds that an ALJ is not required to include in the RFC every limitation contained in a medical opinion that the ALJ has deemed to be persuasive. (Def.'s Mem. 16.) The Commissioner also directs the Court to *John W. v. Kijakazi*, No. 22-CV-2612 (PAM/TNL), 2023 WL 2540566 (D. Minn. Mar. 16, 2023), which was affirmed by the Eighth Circuit Court of Appeals after briefing was complete in this case in *Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761 (8th Cir. Oct. 12, 2023).

The facts of *John W.* are remarkably similar to the facts of this case. In *John W.*, an examining medical source and two state agency consultants opined that the plaintiff's interactions with coworkers, supervisors, and the public should be limited to brief and superficial contacts. 2023 WL 2540566, at *2. The ALJ found these opinions persuasive. *Id.* In assessing the plaintiff's RFC, the ALJ limited the plaintiff to "occasional interaction

9

with the public" and excluded "teamwork or work[ing] in tandem with others." *Id.* The ALJ did not limit the plaintiff's interactions with supervisors or coworkers to brief or superficial contact and did not explain why not. *Id.* The court held that the ALJ did not err by omitting the social limitations from the RFC or by failing to provide an explanation. *Id.* The court explained that the ALJ has the duty to synthesize all of the evidence in assessing a claimant's RFC, and the record contained evidence of the plaintiff's ability to get along with others, such as frequenting restaurants with friends and getting along with coworkers at a former job. *Id.* Thus, substantial evidence supported the ALJ's assessment of the plaintiff's ability to interact with coworkers and supervisors. *Id.*

The Eighth Circuit affirmed *John W.* on October 12, 2023. *Wyatt*, 2023 WL 6629761, at *1. The court agreed that the ALJ "did not err in declining to include more restrictive limitations regarding interactions with coworkers and supervisors" and "was not required to adopt the exact limitations set forth in the opinions she found persuasive." *Id.* Thus, "substantial evidence supported the RFC findings regarding Wyatt's abilities to interact with others in the workplace." *Id.*

Even more recently, the Eighth Circuit issued its opinion in *Lane v. O'Malley*, No. 23-1432 (8th Cir. Jan. 26, 2024) (unpublished). In that case, the ALJ had found that the claimant could "respond appropriately to occasional interaction with supervisors and co-workers but should have no team or tandem work with co-workers and no interaction with the general public." *Id.* at 2. The claimant argued that the reference to "occasional" contact was inconsistent with a medical opinion—which the ALJ had found persuasive—that the claimant could have only "superficial" interactions. *Id.* The claimant argued that the term

"occasional" referred to the quantity of contacts, but the term "superficial" referred to the quality of contacts. *Id.* The court "reject[ed] this manufactured inconsistency," noting that the record contained evidence that the claimant "could relate to others superficially, work in small groups, and maintain at least minimal relationships with others," which was not inconsistent with "occasional" interactions. *Id.*

*Lane* and *Wyatt* are controlling here. In *Lane*, the Eighth Circuit rejected the distinction between "superficial" and "occasional" interactions, which is Plaintiff's primary argument. And, as in *Lane*, there is nothing about the ALJ's limitation to occasional interactions with coworkers and supervisors that conflicts with Dr. Karayusuf's opinion or the findings of the state agency consultants. Dr. Karayusuf found Plaintiff polite, friendly, cooperative, and pleasant, and opined that Plaintiff could relate superficially to coworkers and supervisors. The consultants found that Plaintiff would be moderately limited in interacting with others and agreed with Dr. Karayusuf that Plaintiff would be limited to superficial interactions with coworkers and supervisors. The ALJ's limitation to occasional interactions is not inconsistent with these findings.

Furthermore, consistent with *John W.*, the ALJ in this case identified additional evidence of Plaintiff's ability to get along with others, such as his self-reported ability to get along with authority figures as "50/50"; his statement that he had never been fired because of problems getting along with others; his statement that he had no difficulty getting along with others; his report that he spent time and communicated with others on a daily basis; his statement that he got along with his girlfriend and parents; and mental status examinations that described Plaintiff as cooperative, friendly, and able to interact with

others. This evidence, in addition to Dr. Karayusuf's findings that Plaintiff was cooperative, friendly, and polite, is substantial evidence that supports the ALJ's determination regarding Plaintiff's ability to interact with others in the workplace. *See John W.*, 2023 WL 2540566, at *2. Accordingly, the ALJ did not err in denying Plaintiff benefits, and the Court will recommend that the decision be affirmed.

## IV.   Recommendation

The Court finds that the ALJ did not err in assessing Plaintiff's RFC. The ALJ was not required to include the superficial-contact limitation in the RFC, and the RFC is not inconsistent with the opinion and findings that the ALJ found persuasive. The ALJ's decision to deny benefits is supported by substantial evidence in the record. Accordingly, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. The relief requested in Plaintiff's Briefs (Dkt. Nos. 11, 18) be **DENIED**;

2. Defendant's request to affirm the Commissioner's decision (Dkt. No. 16) be **GRANTED**;

3. The Commissioner's decision be **AFFIRMED**; and

4. **JUDGMENT BE ENTERED ACCORDINGLY**.


Date:  January 26, 2024            *s/ John F. Docherty*
                                   JOHN F. DOCHERTY
                                   United States Magistrate Judge

## NOTICE

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and therefore is not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to D. Minn. LR 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within fourteen days. A party may respond to objections within fourteen days of being served a copy. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).